## Ewers v. Commonwealth.

**Dec. 17, 1940.**

Watt M. Prichard, Judge.

C. F. See, Jr., Eldred E. Adams and M. U. Dixon for appellant

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

At a dance in the gymnasium of the Louisa High School on the evening of February 2, 1940, William Ewers seriously cut James Frazier. He appeals from a conviction of maliciously cutting and wounding with intent to kill, carrying a sentence of three years in prison.

Both parties were 18 years old at the time and had been intimate friends and companions. Ewers was sober; Frazier was intoxicated. According to Frazier, while he was dancing with a certain young lady, Ewers roughly cut in, and when told "This is a no-break," Ewers hit him in the mouth with steel knucks, as he believed. The boys were taken from the room and separated for five or ten minutes. After Frazier returned he saw Ewers across the room and went over to him to see "how he felt about it," but without any intention of renewing the trouble. He laid his hand on Ewers' shoulder and they had a low conversation, but "nothing out of the way," according to Frazier, and Ewers deliberately cut him in the chest. It appears that Atkins, the high school football coach, had gone to the boys to keep down trouble and while he was trying to quiet Frazier, Ewers cut him.

In his defense, Ewers testified that he had politely asked if he could cut in on the dance and Frazier responded, "Hell, no, this is a no-cut." He apologized and as he walked away he heard Frazier say something, so he turned around and asked, "James, were you talking about me?" and Frazier replied, "You are damn right, you son-of-a-bitch." Then Ewers hit him with his fist. He admitted having had steel knucks with him but denied having used them on Frazier. When the boys returned to the dance hall, Ewers testified that he

saw Frazier staggering across the room toward him and he got out his knife. When he got there "James had his fist like this and staggering toward me and hit me like this." He struck back at him with his left fist but missed him and then Frazier fell on the knife as he jerked it up. Other witnesses corroborate the defendant's version of the trouble.

The indictment clearly charged the crime of maliciously cutting another with a knife with the intention to kill as is described by Section 1166, Kentucky Statutes. It is not duplicitous in charging such offense and that of stabbing another in sudden affray or in sudden heat and passion, described in Section 1242, Kentucky Statutes, which is a degree of the former. The evidence fully warranted the submission of both the greater and lesser offenses, as was done in forms of instructions often approved. The instructions are not subject to the complaint that no distinct line was drawn between the two offenses. Appellant's counsel say that it was reversible error to fail to define "maliciously." The record shows that instruction No. 5 defined "wilfully" and defined "maliciously" as meaning "a determination to do the act of cutting, stabbing or wounding without legal excuse." This was approved in Hall v. Commonwealth, 155 Ky. 541, 159 S. W. 1155. The word "maliciously" is synonymous with "malice aforethought," and the definition given by the court was more favorable to the defendant than several others approved as proper. Cf. Instructions to Juries, Stanley, Sections 810, 868, 884, 907.

We have held it to be the better practice for the court to define "sudden affray" since it is a legal term (Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591, 594), but the failure to do so is not prejudicial error. Brummett v. Commonwealth, 235 Ky. 322, 31 S. W. (2d) 391; Shorter v. Commonwealth, 248 Ky. 37, 58 S. W. (2d) 224. Certainly, where there is such a simple state of facts as was presented in this case, the failure to define that term was not harmful. The phrase "sudden heat and passion" defines itself although it is customary in an instruction on voluntary manslaughter to add "upon provocation reasonably calculated to excite the passions of the defendant beyond the power of his control," or a similar limitation. But Section 1242 of the Statutes under which the instruction was given does not

contain such condition, and it was proper to follow the language of the statute.

Several particular instances of incompetent testimony are pointed out to support the general argument that the defendant did not have a fair trial. During the course of the examination, the prosecuting witness made some irrelevant statements as additions to answers to proper questions, e. g., that he believed he had been struck with steel knucks by Ewers, ''because he knew the boy always carried them.'' In each instance the court sustained objections of the defendant and admonished the jury not to consider such statements. There were only a few other instances of like character. The only element of unfairness that got into the trial was the apparent purpose of the commonwealth's attorney to emphasize the revelation that the defendant carried steel knucks. The court did the best he could to control the situation short of resorting to punitive measures. But these few instances of unfairness under the facts cannot be regarded as so prejudicial to the defendant's substantial rights as to authorize a reversal of the judgment.

The judgment is affirmed.